## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| LEON VANN, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | )  **CASE NO. 2:07-cv-50-LES-CSC** |
| **vs.** | ) |
| | ) |
| PACTIV CORPORATION and | ) |
| LOUISIANA-PACIFIC CORPORATION, | ) |
| | ) |
|     **Defendants.** | ) |
| | ) |

## DEFENDANT PACTIV CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Pactiv Corporation ("Pactiv"), by its attorneys, for its Answer and Affirmative Defenses to Plaintiff's Complaint, states as follows:

### JURISDICTION

1.      Plaintiff is a citizen of the State of Alabama and Defendants are corporations incorporated under the laws of the State of Delaware. PACTIV Corporation's principal place of business is in the State of Illinois, and Louisiana-Pacific Corporation's principal place of business is in the State of Oregon or the State of Tennessee.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  This Court has jurisdiction based upon diversity of citizenship and amount.

**ANSWER:**    Pactiv objects to the term "Defendants" as vague.  Pactiv states that, throughout this Answer, it responds only for itself and its immediate corporate predecessor, and not for Louisiana-Pacific Corporation ("L-P").  Pactiv admits that the amount in controversy exceeds $75,000, and that Pactiv is a Delaware corporation with its principal place of business in Illinois. Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and therefore denies them.

## VENUE

2.      Venue of this action is proper in the United States Federal District Court for the Middle District of Alabama, because many of the wrongful acts which caused the Plaintiff's injuries and damages occurred in Covington County, Alabama, and because the Plaintiff were injured in Covington County, Alabama.

**ANSWER:**    Pactiv admits that venue is proper in the Middle District of Alabama and denies

any remaining allegations in Paragraph 2.

## DEFENDANTS

3.      Louisiana-Pacific Corporation does business by agent in the State of Alabama and may be served through their attorney of record, Bernard Taylor at Alston & Bird, 1201 W. Peachtree Street, Atlanta, GA 30309.

**ANSWER:**    Paragraph 3 is directed to another defendant and therefore no response is required.

To the extent a response is required, Pactiv is without knowledge or information sufficient to

form a belief as to the truth of the allegations and therefore denies them.

4.      PACTIV Corporation does business by agent in the State of Alabama and may be served by service on their attorney of record John Berghoff, Jr., at Mayer, Brown, Rowe & Maw, LL-P, 71 South Wacker Drive, Chicago, IL 60606.

**ANSWER:**    Denied.  Pactiv further states that its undersigned counsel agreed to and have

accepted service on its behalf.

## PLAINTIFF

5.      The Plaintiff in this action suffers from disease or defect caused by exposure to hazardous substances released into the environment by Defendants. Plaintiff also suffers from disease related to his primary disease and from multiple diseases or disorders. Inclusion in one of the subgroups set out above is not intended to limit Plaintiff's claims for damages resulting only from the subgroup disease category. Plaintiff's claims damages for all personal injury caused by toxic chemical released from Defendants' facility.

**ANSWER:**    Pactiv admits that Plaintiff makes claims for personal injury.  Pactiv denies that

its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff to

be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's

alleged injuries.  Pactiv is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations contained in Paragraph 5 and therefore denies them.

**BACKGROUND**

6.     Plaintiff make a claim for personal injuries and property damage caused by exposure to toxic chemicals and hazardous wastes which were released into the environment from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

**ANSWER:**     Pactiv admits that Plaintiff makes claims for personal injuries and property

damage and that Pactiv's immediate corporate predecessor, prior to 1983, owned and operated a

lumber mill in Covington County, Alabama that treated some wood products.  Pactiv denies any

remaining allegations in Paragraph 6.

7.     The facility is located between the towns of Lockhart and Florala, Alabama, on a site formerly occupied by Lockhart Lumber Company, a predecessor to PACTIV Corporation.

**ANSWER:**     Pactiv admits that a former lumber mill that treated some wood products was

located in Lockhart, Alabama (the "Facility"), on a site formerly occupied by Lockhart Lumber

Company.  The allegation in Paragraph 7 that Lockhart Lumber Company is a "predecessor" to

Pactiv merely states a legal conclusion to which no response is required.  Pactiv denies any

remaining allegations in Paragraph 7.

8.     Emissions of hazardous substances by Defendants and/or their predecessor corporations into the environment proximately contributed to cause Plaintiff's injuries and damages.

**ANSWER:**     Denied.

9.     Plaintiff resided in the Florala/Lockhart community for a period of time or Plaintiff was present at other homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area.

**ANSWER:**     Pactiv is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 9 and therefore denies them.

10.     PACTIV Corporation or its predecessor began operation of the facility in the late 1950's and engaged in the business of treating lumber and pine wood poles with creosote, pentachlorophenol and CCA (chromium, copper and arsenic).

**ANSWER:**     Pactiv denies that it engaged in any operations at the Facility.  Pactiv states that wood treating operations at the Facility began in the early 1960s, and that Pactiv's immediate corporate predecessor (Tennessee River Pulp & Paper Company) acquired the facility in 1978 before selling it to L-P in 1983.  Throughout this Answer, Pactiv therefore construes allegations concerning "Pactiv" as referring to Pactiv or its immediate corporate predecessor.  Pactiv admits that at various times and in various quantities, its immediate corporate predecessor used creosote and pentachlorophenol to treat wood at the Facility.  Pactiv denies any remaining allegations in Paragraph 10.

11.     Energy for the Defendants' wood treatment operation was partly obtained by burning waste wood and bark in three boilers which were used to create steam and provide heat and energy for the sawmill and wood treatment operation.

**ANSWER:**     Pactiv admits that at various times and in varying quantities, its immediate corporate predecessor burned certain wood and bark in three boilers that were used to provide heat and energy for facility operations.  Pactiv denies any remaining allegations in Paragraph 11.

12.     The boilers used by Defendants were not licensed as hazardous substance or toxic waste incinerators.

**ANSWER:**     Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 12.

13.     The boilers used by Defendants were not designed or intended to be used as hazardous substance or toxic waste incinerators.

4

**ANSWER:**    Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

14.    The boilers used by Defendants at the facility would not have safely disposed of hazardous substances or toxic waste burned in them.

**ANSWER:**    Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries.

15.    The boilers used by Defendants were not licensed as dioxin/furan compounds incinerators.

**ANSWER:**    Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 15.

16.    The boilers used by Defendants were not designed or intended to be used as dioxin/furan compound incinerators.

**ANSWER:**    Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

17.    The boilers used by Defendants at the facility would not have safely disposed of dioxin/furan compounds waste burned in them.

**ANSWER:**    Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries.

18.    The boilers used by Defendants were not licensed as arsenic compounds incinerators.

**ANSWER:**    Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any

and all required permits for the operation of the boilers. Pactiv denies any remaining allegations in Paragraph 18.

19.    The boilers used by Defendants were not designed or intended to be used as arsenic compounds incinerators.

**ANSWER:**    Denied. Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

20.    The boilers used by Defendants at the facility would not have safely disposed of arsenic compounds burned in them.

**ANSWER:**    Denied. Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries.

21.    The boilers used by Defendants were not licensed as hexavalent chromium compounds incinerators.

**ANSWER:**    Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers. Pactiv denies any remaining allegations in Paragraph 21.

22.    The boilers used by Defendants were not designed or intended to be used as hexavalent chromium compounds incinerators.

**ANSWER:**    Denied. Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

23.    The boilers used by Defendants at the facility would not have safely disposed of hexavalent chromium compounds burned in them.

**ANSWER:**    Denied. Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries.

24.     The boilers used by Defendants were not licensed as pentachlorophenol compounds incinerators.

**ANSWER:**     Pactiv denies that its immediate corporate predecessor was required to obtain any such licenses for the boilers, and states that its immediate corporate predecessor obtained any and all required permits for the operation of the boilers.  Pactiv denies any remaining allegations in Paragraph 24.

25.     The boilers used by Defendants were not designed or intended to be used as pentachlorophenol compounds incinerators.

**ANSWER:**     Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries, and states that its immediate corporate predecessor used the boilers as designed and intended.

26.     The boilers used by Defendants at the facility would not have safely disposed of pentachlorophenol compounds burned in them.

**ANSWER:**     Denied.  Pactiv further denies that any materials incinerated in the boilers caused or contributed to Plaintiff's alleged injuries.

27.     The facility also operated a teepee burner which was used to burn waste or scrap wood. Use of the teepee burner was discontinued by PACTIV on or about February 21, 1980.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor operated a teepee burner and that its use was discontinued in or around 1980.  Pactiv denies any remaining allegations contained in Paragraph 27.

28.     The Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

**ANSWER:**     The allegations in Paragraph 28 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

29.    The Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes which are carcinogens, mutagens, teratogens, or endanger human health.

**ANSWER:**    The allegations in Paragraph 29 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

30.    The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

**ANSWER:**    The allegations in Paragraph 30 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

31.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists creosote as a probable human carcinogen.

**ANSWER:**    The allegations in Paragraph 31 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

32.    Creosote is a mixture of chemicals and is probably carcinogenic to humans.

**ANSWER:**    Pactiv admits that creosote is a mixture of certain chemicals.  Pactiv denies that creosote is carcinogenic to humans and denies that any creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 32.

33.    The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals which are known to cause cancer.

**ANSWER:**    Pactiv admits that its immediate corporate predecessor used creosote at various times but denies that any creosote for which Pactiv is allegedly responsible caused or contributed

in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 33 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

34.     The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals which are believed to cause cancer.

**ANSWER:**     Paragraph 34 is duplicative of Paragraph 33 and therefore no response is required. To the extent a response is required, Pactiv incorporates its response to Paragraph 33 herein.

35.     The Secretary of Health and Human Services and the United States Environmental Protection Agency lists pentachlorophenol as a probable human carcinogen.

**ANSWER:**     The allegations in Paragraph 35 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

36.     Pentachlorophenol is probably carcinogenic to humans.

**ANSWER:**     Pactiv denies that pentachlorophenol has been demonstrated to cause cancer in humans and denies that any pentachlorophenol for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 36.

37.     The pentachlorophenol used by Defendants for wood treatment at the subject wood treatment facility was also contaminated with dioxin/furans.

**ANSWER:**     Denied.

38.     Dioxin and/or dioxin/furans contaminates in pentachlorophenol used at the facility included 2,3,7,8-tetrachlorodibenzo-p-dioxins, other tetrachlorodibenzo-p-dioxins, pentachlorodibenzo-p-dioxins, hexachlorodibenzo-p-dioxins, heptachlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochlorodibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzo-furans, octachlorodibenzo-furans and optachlorodibenzo-p-dioxins.

**ANSWER:**     Denied.

39.     The pentachlorophenol used by Defendants at the Florala/Lockhart facility contained chemicals which are known to cause cancer.

**ANSWER:**    Pactiv admits that its immediate corporate predecessor used pentachlorophenol at various times but denies that any pentachlorophenol for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 39 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

40.    The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with polycyclic aromatic hydrocarbons (PAHs).

**ANSWER:**    Pactiv admits that creosote is a mixture of chemicals that contain polycyclic aromatic hydrocarbons (PAHs) and denies any remaining allegations in Paragraph 40.

41.    The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with or contained benzene.

**ANSWER:**    Denied.

42.    Benzene is listed by the Secretary of Health and Human Services and United States Environmental Protection Agency as a known human carcinogen.

**ANSWER:**    The allegations in Paragraph 42 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

43.    The wood treatment chemicals used by Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

**ANSWER:**    Pactiv denies that any wood treatment chemical for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv states that Paragraph 43 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

44.    The Defendants also made use of cooling tower corrosion inhibitors which contained hexavalent chromium and after 1985, made use of wood treatment chemicals which contained hexavalent chromium.

**ANSWER:**    Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 concerning the use of cooling tower inhibitors and therefore denies them.  The remaining allegations of Paragraph 44 are directed to another defendant and therefore no response is required.  To the extent an answer is required, Pactiv is without knowledge or information to form a belief as to the truth of the allegations and therefore denies them.

45.    The Secretary of Health and Human Services and United States Environmental Protection Agency list chromium (VI) as a known human carcinogen.

**ANSWER:**    The allegations in Paragraph 45 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

46.    The wood treatment operation employed by Defendants created or generated waste water when water in wood products was replaced by treatment chemicals in a pressurized treatment cylinder or "retort."

**ANSWER:**    Pactiv admits that wood treatment operations at the Facility, including the use of pressurized treatment cylinders, produced waste water in various quantities and at various times. Pactiv denies any remaining allegations in Paragraph 46.

47.    The waste water created or generated by Defendants was contaminated with toxic or hazardous chemicals from the treatment chemicals.

**ANSWER:**    Pactiv admits that certain waste water created or generated by its immediate corporate predecessor contained certain chemicals and residue from the wood treatment process, but denies that any waste water caused or contributed in any way to Plaintiff's alleged injuries. Pactiv denies any remaining allegations in Paragraph 47.

48.    The Defendants further operated or maintained water evaporation and containment areas, or lagoons.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor operated water evaporation and containment areas at certain times.

49.     The Defendants PACTIV and L-P engaged in the air disposal of toxic waste water by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over disposal lagoons.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor operated a spray field in one lagoon, that did not receive waste water from wood treating operations, for a short period of time in the early 1980s.  Pactiv denies that its immediate corporate predecessor sprayed "toxic waste water" into the air, denies that the spray system caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries, and denies any remaining allegations in Paragraph 49.

50.     Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits.

**ANSWER:**     Denied.

51.     Beginning November, 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor sold the Facility to L-P in November 1983.  Pactiv affirmatively states that in November 1983, Pactiv's immediate corporate predecessor ceased all operations at the Facility and transferred title to L-P, and that thereafter, neither Pactiv nor any Pactiv affiliate engaged in any activity related to any ongoing Facility operations.

52.     L-P continued operating the facility with the same local management in the same manner as PACTIV.

**ANSWER:**     Paragraph 52 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

53.     Within a year after L-P began operation of the facility they began using another wood treatment chemical which contained copper, arsenic and chromium (CCA).

**ANSWER:**     Paragraph 53 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

54.     In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV.

**ANSWER:**     Paragraph 54 merely states a legal conclusion and is directed to another defendant and therefore no response is required.

55.     The Secretary of Health and Human Services and the United States Environmental Protection Agency lists arsenic as a known human carcinogen.

**ANSWER:**     The allegations in Paragraph 55 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv states that the applicable statutes and regulations speak for themselves and denies any characterization thereof.

56.     Arsenic is known to cause cancer in humans.

**ANSWER:**     Pactiv admits that at certain levels, arsenic can cause cancer in humans.  Pactiv denies that any arsenic for which it is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries.

57.     During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

**ANSWER:**     Denied.

58.     During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:**     Denied.

59.     During the term of its operation, L-P sprayed toxic waste water into the air.

**ANSWER:**    Paragraph 59 is directed to another defendant and therefore no response is required.   To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

60.    During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

**ANSWER:**    Paragraph 60 is directed to another defendant and therefore no response is required.   To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

61.    The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:**    Denied.

62.    The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

**ANSWER:**    Paragraph 62 is directed to another defendant and therefore no response is required.   To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

63.    Defendants engaged in the burning of hazardous wastes which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

**ANSWER:**    Denied.

64.    The Defendants also used sawdust to filter and contain hazardous wastes from the wood treatment solutions and their waste water.

**ANSWER:**    Denied.

65.    The sawdust used by Defendants was, at times, contaminated with creosote.

**ANSWER:**    Denied.

66.    The sawdust used by Defendants was, at times, contaminated with pentachlorophenol.

**ANSWER:**    Denied.

67.    The sawdust used by Defendants was, at times, contaminated with dioxin/furan compounds.

**ANSWER:**    Denied.

68.    The sawdust used by Defendants was, at times, contaminated with PAH's.

**ANSWER:**    Denied.

69.    The sawdust used for containment by L-P was further contaminated with arsenic.

**ANSWER:**    Paragraph 69 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

70.    The sawdust filter material used to filter wastes by Defendants was burned in the operation boilers.

**ANSWER:**    Denied.

71.    Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

**ANSWER:**    Pactiv admits that at times the operations and processes of its immediate corporate predecessor occurred at night and on weekends.  Pactiv denies the remaining allegations in Paragraph 71.

72.    Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

**ANSWER:**    The allegations in Paragraph 72 merely state a conclusion for which no response is required.  To the extent a further response is required, the allegations are denied.

73.    Defendants sprayed toxic waste into the air which was contaminated with known human carcinogens or probable human carcinogens.

**ANSWER:**    Denied.

74.     Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

**ANSWER:**     Pactiv admits that its immediate corporate predecessor utilized various chemicals during wood treatment operations.  Pactiv denies the remaining allegations in Paragraph 74.

75.     The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

**ANSWER:**     Pactiv admits that its immediate corporate predecessor utilized various chemicals, including creosote and pentachlorophenol, during wood treatment operations.  Pactiv denies the remaining allegations in Paragraph 75.

76.     The physical forms of these chemicals to which Plaintiff was exposed include off-site migration of wood preservative liquids, waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

**ANSWER:**     Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiffs to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations in Paragraph 76.

77.     The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

**ANSWER:**     Denied.

78.     The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

**ANSWER:**     Paragraph 78 is directed to another defendant and therefore no response is required.   To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

79.     Groundwater at the facility has been contaminated by toxic and hazardous wastes.

**ANSWER:**     Pactiv admits that groundwater beneath the Facility has been remediated pursuant to plans and directions approved by USEPA and ADEM.   Pactiv denies any remaining allegations in Paragraph 79.

80.     Groundwater at the facility which is contaminated by toxic and hazardous wastes has migrated off-site.

**ANSWER:**     Denied.

81.     The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

**ANSWER:**     Denied.

82.     The Defendants engaged in the discharge of toxic waste fluids.

**ANSWER:**     Denied.

83.     The Defendants allowed the discharge of toxic chemical vapors, particulates and aerosols into the air.

**ANSWER:**     Denied.

84.     The day to day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous substances and known or probable human carcinogens.

**ANSWER:**     Denied.

85.     Defendants used toxic wastes to make roadways on the facility and scattered it about.

**ANSWER:**     Denied.

86.     Waste ashes from the facility boilers contained substances listed by EPA as human carcinogens or probable human carcinogens or likely human carcinogens.

**ANSWER:**    Denied.

87.    Ashes from the boilers were dumped on the facility property.

**ANSWER:**    Denied.

88.    Toxic chemicals and toxic boiler ashes spread over the facility and contributed to toxic dust which was subject to wind transportation.

**ANSWER:**    Denied.

89.    PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER:**    Denied.

90.    L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

**ANSWER:**    Paragraph 90 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

91.    Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote and the chemical constituents contained therein.

**ANSWER:**    Pactiv denies that any pentachlorophenol or creosote for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries. Pactiv states that Paragraph 91 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

92.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

**ANSWER:**    Paragraph 92 is directed to another defendant and therefore no response is required.    To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

93.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

**ANSWER:**    Pactiv denies that Pactiv or its immediate corporate predecessor were aware or that any air emissions or disposal for which Pactiv is allegedly responsible were of a "hazardous nature" or caused or contributed in any way to Plaintiff's alleged injuries.    Pactiv denies any remaining allegations in Paragraph 93.

94.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the boiler ash that was being disposed into ditches and creeks.

**ANSWER:**    Paragraph 94 is duplicative of Paragraph 93 and therefore no response is required. To the extent a response is required, Pactiv incorporates its response to Paragraph 93 herein.

95.    The Defendant PACTIV sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER:**    Denied.

96.    The Defendant L-P sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

**ANSWER:**    Paragraph 96 is directed to another defendant and therefore no response is required.    To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

97.    Pentachlorophenol, creosote, pentachlorophenol constituents, creosote constituents, CCA, CCA constituents, pentachlorophenol, creosote, benzene, PAHs and dioxin/furans and pesticides used as wood treatment chemicals have been identified as causing serious and permanent health problems, including, but not limited to, various types of cancer, lung cancer, breast cancer, bone cancer, kidney cancer, liver cancer, Scleroderma, leukemia, sarcoidosis, gastrointestinal problems, hematological problems, neurological problems, lupus, kidney problems, female reproductive organ disease, reproductive problems, eye disease, skin

disease, respiratory disease, sinus problems, coughing, miscarriages, premature births and birth defects.

**ANSWER:** Pactiv denies that any pentachlorophenol, creosote, or other chemicals for which Pactiv is allegedly responsible caused or contributed in any way to Plaintiff's alleged injuries. Pactiv states that Paragraph 97 contains insufficient predicate information for Pactiv to admit or deny any remaining allegations.

98. At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

**ANSWER:** Denied.

99. Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released therefrom.

**ANSWER:** Denied. Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

100. In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the Plaintiff or to the public.

**ANSWER:** Denied. Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

101. The Defendants made no effort to warn the Plaintiff or surrounding neighborhoods or public of the nature of the disease or cancer causing emissions from their facility.

**ANSWER:** Denied. Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

102.    The toxic chemicals emitted by Defendants were persistent when deposited in Plaintiffs homes and environment so that Plaintiff continued to be exposed to them even after the time of emission.

**ANSWER:**    Denied.    Pactiv further denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.

103.    Subsequent to 1997, the Defendants have both exercised control of the facility and have both assumed responsibility for environmental remediation of the site.

**ANSWER:**    Pactiv admits that it has participated in certain remediation activities at the Facility.  Pactiv denies that Pactiv or any Pactiv affiliate "exercised control" over the Facility at any time after the Facility was sold to L-P in 1983.  Pactiv further denies any remaining allegations in Paragraph 103.

104.    Plaintiff avers the toxic chemicals continue to migrate off site and continue to contaminate Plaintiff's person and property.

**ANSWER:**    Denied.

105.    There were instances when PACTIV did not comply with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER:**    Denied.

106.    There were instances when PACTIV did not comply with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER:**    Denied.

107.    There instances when L-P did not comply with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

**ANSWER:**    Paragraph 107 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

108.    There were times when L-P did not comply with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

**ANSWER:**    Paragraph 108 is directed to another defendant and therefore no response is required.  To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

109.    At all times pertinent hereto, the Defendants PACTIV and L-P by through their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic, pentachlorophenol, dioxin/furans, creosote and their constituents which contained hazardous substances and toxic chemicals.

**ANSWER:**    Denied.

110.    The fact that Plaintiff were present at homes in various locations in the Florala/Lockhart area caused them to be exposed to toxic chemicals and/or hazardous substances or known or probable human carcinogens which were released or produced at Defendants' wood treatment facility in Lockhart, Alabama.

**ANSWER:**    Denied.

111.    Plaintiff allege that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Plaintiff to suffer physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and which will probably contribute to their death.

**ANSWER:**    Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries.  Pactiv denies any remaining allegations contained in Paragraph 111.

112.    Plaintiff's homes and property was contaminated by the hazardous substances which Defendants caused or allowed to be deposited in and upon Plaintiffs homes and real property (for the Plaintiff who is a property owners). As a result, remediation and removal of the hazardous substances is required and Plaintiff's property has been caused to decrease in value.

**ANSWER:**    Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility deposited any hazardous substances in or upon Plaintiff's homes or real property.

Pactiv further denies that remediation or removal of any hazardous substances is required or that Plaintiff's property has been caused to decrease in value. Pactiv is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 112 and therefore denies them.

113.     Plaintiff suffered from a disease that is latent and which does not manifest itself until after a lengthy period of time after initial exposure.

**ANSWER:**     Pactiv denies that its immediate corporate predecessor's operations or processes at the Facility caused Plaintiff to be exposed to any chemical or substance that caused or contributed in any way to Plaintiff's alleged injuries. Pactiv is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in Paragraph 113 and therefore denies them.

114.     Plaintiff did not know and reasonably had no knowledge or way of ascertaining that their disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint.

**ANSWER:**     Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 and therefore denies them.

115.     Plaintiff further allege that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations based upon a computation of time which includes any time that accrued during the time defined by the parties' tolling agreement.

**ANSWER:**     Pactiv admits that it entered into a specific tolling agreement for a limited period of time applicable to some but not all of the 1,427 named plaintiffs in this and related cases. Pactiv denies any remaining allegations in Paragraph 115.

116.     During the period of time that Defendants operated or controlled the subject facility, Defendants created, stored or disposed of toxic chemicals or hazardous substances or chemicals which were regulated by state and federal law.

**ANSWER:**     Pactiv admits that at various times during its immediate corporate predecessor's operations at the Facility before 1983, some disposal and handling activities were subject to federal and state regulatory control.  Pactiv denies any remaining allegations in Paragraph 116.

117.    Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 117.

118.    Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 118.

119.    The Plaintiff avers that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time.  Pactiv states that those regulations speak for themselves and denies any characterization thereof.  Pactiv denies any remaining allegations in Paragraph 119.

120.    Plaintiff avers that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals which they stored on their premises.

**ANSWER:**     Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents

for certain periods of time. Pactiv states that those regulations speak for themselves and denies any characterization thereof. Pactiv denies any remaining allegations in Paragraph 120.

121. Plaintiff avers that Defendants were required by law to keep written records of any hazardous waste which they disposed of either on-site or off-site.

**ANSWER:** Pactiv admits that, pursuant to federal and state regulations, Pactiv or its immediate corporate predecessor were at certain times required to maintain certain documents for certain periods of time. Pactiv states that those regulations speak for themselves and denies any characterization thereof. Pactiv denies any remaining allegations in Paragraph 121.

122. In October, 2004, Defendant L-P had actual knowledge of the pending or potential litigation which would be filed against them by Plaintiff.

**ANSWER:** Paragraph 122 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

123. Upon information and belief, Plaintiff avers that with knowledge of claims that would become litigation, Louisiana-Pacific Corporation destroyed or disposed of material evidence and documents.

**ANSWER:** Paragraph 123 is directed to another defendant and therefore no response is required. To the extent a response is required, Pactiv is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

124. Plaintiff are entitled to benefit of the substantive law of the State of Alabama, including an inference of Defendants' guilt, culpability or awareness of their liability because of spoliation of evidence.

**ANSWER:** Denied. Pactiv further states that Plaintiff has made no allegations concerning any alleged spoliation of evidence by Pactiv.

125. Plaintiff have exhausted all efforts, including administrative remedies, to redress their damages and cause Defendants to remediate the facility, surrounding area, groundwater and Plaintiff's homes.

**ANSWER**:    Denied.

126.    The Plaintiff assert that they would obtain real and substantial benefit if the Court ordered Defendants to remediate and properly remove toxic chemicals from the subject facility, surround area, groundwater and Plaintiff's homes.

**ANSWER**:    Denied.

127.    Plaintiff are further entitled to injunctive and equitable relief, including costs of this action and attorneys' fees.

**ANSWER**:    Denied.

**COUNT ONE**

**NEGLIGENCE**

128.    Defendants had a duty to Plaintiff since the commencement of their operation and continuing to the date of this lawsuit.

**ANSWER**:    The allegations in Paragraph 128 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.  Pactiv further states that its immediate corporate predecessor, prior to 1983, operated the Facility consistent with any legal duty to all Plaintiffs in this case and the related cases.

129.    Plaintiff were foreseeable victims of the dissemination of toxic fumes and toxic waste into the air, soil and water which evaded the properties, homes and community in which Plaintiff lived for years.

**ANSWER**:    The allegations in Paragraph 129 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv denies that its immediate corporate predecessor disseminated toxic fumes or waste into adjacent properties, homes, or communities.  Pactiv is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 129 and therefore denies them.

130.    The Defendants, their officers, directors, agents and employees knew or should have known with the exercise of reasonable care that their operations emitted toxic and hazardous substances and particulates, or with the exercise of reasonable care should have

known that the emissions would injure the health of the persons or public who lived near the Defendants' facility, including the Plaintiff.

**ANSWER:**    Denied.

131.    At all times pertinent to this lawsuit, the Defendants failed to use due care to avoid injuring the Plaintiff.

**ANSWER:**    Denied.

132.    The contamination of air surrounding Defendants' facility could have been eliminated or substantially reduced by the exercise of reasonable care and timely installation of effective treatment facility air pollution control devices and other state of the art methods.

**ANSWER:**    Pactiv denies that Pactiv or its immediate corporate predecessor caused or

contributed to "contamination of air" surrounding the Facility or failed to exercise reasonable

care.  Pactiv further denies any remaining allegations in Paragraph 132.

133.    The Defendants negligent acts or omissions proximately caused Plaintiff to suffer physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and which will probably result in their death.

**ANSWER:**    Denied.

134.    As a direct and proximate consequence of the negligent acts and omissions of the Defendants, their agents, employees and representatives, Plaintiff suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and which will probably result in their death.

**ANSWER:**    Denied.

## COUNT TWO

### RECKLESSNESS

135.    The failure of Defendants, their officers, agents and employees to prevent the contamination of air or soil or water in the Florala/Lockhart area was wanton and exhibited a reckless disregard for the lives and health of the Plaintiff and persons in surrounding neighborhoods.

**ANSWER:**    Denied.

136.    As a direct and proximate result of gross negligence and wanton acts of the Defendants Plaintiff suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of life and will probably result in their death.

**ANSWER:**    Denied.

137.    The Defendants' gross negligence, reckless and wanton acts and their reckless disregard for the safety of the Plaintiff and the public surrounding their facility entitles the Plaintiff to punitive damages in order to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

**ANSWER:**    Denied.

## COUNT THREE

### NEGLIGENCE PER SE

138.    Defendants violated the standards provided by Code of Alabama 22-27-3(e) by burning hazardous wastes without using an approved incinerator meeting temperature requirements and air pollution controls.

**ANSWER:**    The allegations in Paragraph 138 merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 138, the allegations are denied.

139.    Defendants also violated the provisions of the Alabama Hazardous Wastes Management Act (Code of Alabama 22-30-1 thru 24) by disposing of hazardous waste without a permit or in a manner that their permit did not allow.

**ANSWER:**    The allegations in Paragraph 139 merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 139, the allegations are denied.

140.    Defendants violated the provisions of the Alabama Air Pollution Control Act of 1971 (Code of Alabama 22-28-1 thru 23) by violation of the Rules and Regulations of the Alabama Department of Environmental Management and by disconnecting air pollution control devices installed on company wood fired boilers.

**ANSWER:**    The allegations in Paragraph 140 merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 140, the allegations are denied.

141.    The Defendants violated the Alabama Environmental Management Act (Code of Alabama 22-22A-1 thru 6), the Alabama Solid Waste Disposal Act (Code of Alabama 22-27-1 thru 49) and the Alabama Hazardous Waste Management Act (Code of Alabama 22-30-1 thru 24) by burning hazardous waste without a permit, creating a hazardous substance ash dump, by disconnection of temperature and/or pollution control devices and by violating the rules and regulations of the State of Alabama, including the Alabama Department of Environmental Management Administration Code, by:

a.    violation of Regulation 335-3-3-.05(19)(c) when Defendants failed to meet continuous compliance requirements by burning a different type of waste other than the type waste used to establish boiler operating limits, or

b.    a violation of regulation 335-3-14-.01(1)(b) by operating equipment which issued air contaminates without a permit or in violation of permit, or

c.    a violation of 335-3-4-.02(1)and(2) by allowing hazardous materials which Defendants handled, stored or used to become airborne or migrate off site, or

d.    a violation of 335-14-7-.08 by burning hazardous waste in a wood fired boiler or by operating a boiler without an automatic feed cut-off functioning, or

e.    a violation of 335-14-X by failing to properly train personnel who stored, used or disposed of hazardous wastes, or

f.    a violation of 335-14-5 by disposing of hazardous wastes without permit or in violation of permit requirements, or

g.    a violation of 335-14-7-.08 subpart H for use of an industrial boiler to dispose of hazardous wastes in a manner not allowed or exempted, or

h.    violation of federal rules and regulations adopted by the State of Alabama.

**ANSWER:**    The allegations in Paragraph 141 merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 141, the allegations are denied.

142.    Defendants violated the requirements and standards of the laws of the United States, including the Resource Conservation and Recovery Act, the Clean Air Act, the Clean

Water Act, the Solid Waste Disposal Act and the Comprehensive Environmental Response Compensation and Liability Act.

**ANSWER:**    The allegations in Paragraph 142 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

143.    In particular, the Defendants violated the standards, rules and regulations of the United States Environmental Protection Agency which were promulgated pursuant to the above described public laws.

**ANSWER:**    The allegations in Paragraph 143 merely state a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

144.    The Defendants violated the following regulations:

a.    40 C.F.R. 266.102 by operating an individual boiler in a manner that was not in accordance with permit requirements, or

b.    40 C.F.R. 264.344 by operating a hazardous waste incinerator without permit and which would not have complied with permit requirements, or

c.    40 C.F.R. 61.05 by operating a source of hazardous pollutants without permit and in violation of any permit requirements.

**ANSWER:**    The allegations in Paragraph 144, and its subparts, merely state a legal conclusion to which no response is required.  To the extent a response is required and with respect to any factual allegations in Paragraph 144, and its subparts, the allegations are denied.

145.    Plaintiff avers that Defendants' violations of the laws and regulations of the State of Alabama, the regulations of the State of Alabama which incorporate federal standards, and the regulations of the United States Environmental Protection Agency constitute a violation of a duty intended to prevent harm to persons similar to Plaintiff and that the Defendants' violations are evidence of a breach of duty to Plaintiff.

**ANSWER:**    The allegations in Paragraph 145 merely state a legal conclusion to which no response is required.  To the extent a response is required, Pactiv denies that the cited statutes and regulations were intended to protect a specific class of persons to which Plaintiff's decedent

belonged.  Pactiv further states that Alabama law prohibits laws enacted to protect the general

public from forming the basis of a negligence per se claim.

146.    As a proximate consequence of the aforestated negligence per se, Plaintiff suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:**    Denied.

## COUNT FOUR

### INTENTIONAL TORT

147.    Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make any efforts to remediate the same so that injury to the Plaintiff and other persons was certain or substantially certain.

**ANSWER:**    Denied.

148.    The Defendants' acts manifest an extreme indifference to human life and created a risk of death or severe disease in persons exposed to the hazardous and toxic wastes of Defendants.

**ANSWER:**    Denied.

149.    Defendants intentionally released toxic and hazardous chemicals into the air in violation of law.

**ANSWER:**    Denied.

150.    Plaintiff were foreseeable victims of Defendants' wrongful acts.

**ANSWER:**    Denied.

151.    As a direct and proximate consequence of the knowing and intentional acts of Defendants and their agents, servants, employees, or representatives, Plaintiff suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:**    Denied.

152.    Plaintiff further alleges that the Defendants were aware that the volume of wood treatment and production at the Florala/Lockhart wood treatment facility exceeded the facilities ability to treat and contain toxic wastes. Defendants refused to install and maintain effective pollution control devices because they knew that they would soon cease operations at the facility due to the fact that their lumber operations and the cutting of trees consumed the areas ability to produce merchantable timber.

**ANSWER:**    Denied.

153.    Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

**ANSWER:**    Denied.

154.    The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiff to receive punitive damages in order to punish Defendants, to deter the Defendants from such conduct in the future and deter others from engaging in such irresponsible activity.

**ANSWER:**    Denied.

## COUNT FIVE

### NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

155.    Defendants negligently failed to properly train their employees concerning the hazards of the toxic substances which were used, stored or disposed of at the facility.

**ANSWER:**    Denied.

156.    Defendants negligently failed to properly train their employees on methods of safe handling of the toxic substances used, stored or disposed of at the facility.

**ANSWER:**    Denied.

157.    Defendants negligently made a decision to burn harmful toxic chemicals and hazardous waste in a boiler that was neither designed nor intended to incinerate toxic chemicals. Defendants further carried out the aforesaid negligent decision by negligent day-to-day activities and the burning of hazardous substances in an illegal or improper manner.

**ANSWER:**    Denied.

158.    As a proximate consequence of the Defendants' aforestated negligence, the Plaintiff was caused to suffer injuries and damages.

**ANSWER:**    Denied.

## COUNT SIX

### PRODUCTS LIABILITY

159.   The Defendants engaged in the sale of firewood to residents and persons in the Florala/Lockhart community.

**ANSWER:**   Denied.

160.   The firewood or wood for use in home or stove fires sold by the Defendants included wood which had been treated with toxic wood treatment chemicals.

**ANSWER:**   Denied.

161.   The wood sold by Defendants was burned by persons homes in the neighboring community in a foreseeable and intended use.

**ANSWER:**   Denied.

162.   The Defendants were engaged in the manufacture and sale and placement of wood and wood products into the stream of commerce for commercial purposes.

**ANSWER:**   Denied.

163.   The firewood sold by Defendants was defective and unreasonably dangerous when burned because it emitted toxic and hazardous waste products into the air.

**ANSWER:**   Denied.

164.   As a proximate consequence, Plaintiff suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:**   Denied.

## COUNT SEVEN

### FAILURE TO WARN

165.   The Defendants failed to warn the Plaintiff and members of the public of the dangerous health aspects related to their respective operation and the byproducts, air emissions and other toxic emissions that were released. Specifically, Defendants failed to provide the Plaintiff and other persons similarly situated and the public at large with warnings of dangerous

emissions resulting from their industrial wood treatment facility which was within the knowledge or obvious to the Defendants, but not obvious or known to the ordinary person.

**ANSWER:**    Denied.

166.    The dangers include the fact that the Defendants' operation included emissions which were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

**ANSWER:**    Denied.

167.    The danger also included the toxic air emissions that Defendants caused.

**ANSWER:**    Denied.

168.    Defendants further failed to provide Plaintiff and others with knowledge as to what would be a reasonable, safe and sufficient protection, if there were any, to protect the Plaintiff and others from harm and life threatening injuries as a result of exposure to the Plaintiff and others by the Defendants' emissions.

**ANSWER:**    Denied.

169.    The Defendants have negligently and recklessly failed and refused to warn and advise the Plaintiff and others similarly situated, including the public at large, of the dangers caused by Defendants' past emission of toxic chemicals which the Defendants knew or should have known has endangered the Plaintiff and others by invading their homes, property, breathing zone, schools and the places that they occupy.

**ANSWER:**    Denied.

170.    Despite their knowledge that their toxic emissions have contaminated the environment where Plaintiff lived, even at the present time the Defendants have failed to warn the Plaintiff and others.

**ANSWER:**    Denied.

171.    Defendants' failure to warn took place before, during and after the Plaintiff was exposed to Defendants' toxic emissions.

**ANSWER:**    Denied.

172.    Defendants' breach of duty to warn the Plaintiff of the dangers proposed by their exposure to Defendants' toxic emissions is a substantial contributing cause to Plaintiff's injuries.

**ANSWER:**    Denied.

173.    As a direct and proximate consequence of the acts or omissions and Defendants' failure to warn, Plaintiff suffered physical and emotional injuries and damages, including pain and suffering, loss of wages, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and will probably result in their death.

**ANSWER:**    Denied.

## COUNT EIGHT

### NUISANCE

174.    The acts and omissions described in this Complaint constitute a NUISANCE.

**ANSWER:**    Denied.

175.    The Defendants have used their facility in such a manner as to cause hurt and damage to the Plaintiff.

**ANSWER:**    Denied.

176.    The nuisance created and maintained by the Defendants has proximately caused injury and damage to each of the Plaintiff and includes both physical and emotional injuries and damages, pain and suffering, loss of wages, medical expense, loss of enjoyment of life and diminution of the value of the property of those Plaintiff who own property within two miles of the facility.

**ANSWER:**    Denied.

Pactiv further pleads that any allegation not specifically admitted herein is hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's Complaint, and each Count therein, fails to state a claim against Pactiv upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims against Pactiv are barred, in whole or in part, by the applicable statutes of limitations and/or statutes or rules of repose.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

## FOURTH DEFENSE

No act or omission on the part of Pactiv or its predecessors caused or contributed to Plaintiff's alleged injuries.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of assumption of risk and informed consent.

## SIXTH DEFENSE

Some or all of Plaintiff's alleged injuries, damages or losses, if any, were proximately caused, or contributed to, by the negligence of the Plaintiff (or Decedent).

## SEVENTH DEFENSE

Plaintiff's alleged injuries, damages or losses, if any, were directly and proximately caused by the intervening, superseding acts and conduct of others over which Pactiv and its predecessors had no control, thereby precluding any recovery against Pactiv.

## EIGHTH DEFENSE

To the extent the Complaint fails to join indispensable parties, the Complaint must be dismissed or, alternatively, this civil action should be stayed pending other appropriate relief by the Court.

## NINTH DEFENSE

Plaintiff's claims are barred in whole or in part in as much as Pactiv owed no legal duty to Plaintiff (or Decedent) as alleged in the Complaint.

**TENTH DEFENSE**

Plaintiff (or Decedent) failed to mitigate any damages or losses that Plaintiff allegedly sustained.

**ELEVENTH DEFENSE**

To the extent Plaintiff seeks punitive damages, an award of punitive damages in this case would violate Pactiv's rights to procedural and substantive due process and to equal protection of the law under the Fifth and Fourteenth Amendments to the Constitution of the United States, U.S. Const. Amends. V, XIV, § 1, the excessive fines provision of the Eighth Amendment to the Constitution of the United States, U.S. Const. Amend. VIII, and Article I, Sections, 1, 6, 13 and 15 of the Constitution of the State of Alabama, in that (a) Alabama law provides inadequate standards or criteria for the determination of whether punitive damages should be imposed; (b) the standards or criteria provided by Alabama law for the determination of whether punitive damages should be imposed are impermissibly vague and indefinite; (c) Alabama law provides inadequate standards or criteria upon which a trier of fact may rely in determining the amount of a punitive damage award; (d) the procedures pursuant to which punitive damages may be awarded permit the imposition of different penalties for the same or similar acts; (e) the procedures pursuant to which punitive damages may be awarded under Alabama law fail to provide reasonable limits on the amount of punitive damages awarded; (f) Alabama law permits the imposition of punitive damages in excess of the amount permitted or required under statutes providing civil remedies or fines for the same or similar conduct, including willful conduct; (g) Alabama law permits the imposition of punitive damages in excess of the maximum criminal penalties for the same or similar conduct; (h) Alabama law permits the imposition of punitive damages, which are penal in nature, upon a burden of proof less than the "beyond reasonable

doubt" standard required in criminal cases; (i) Alabama law permits the imposition of punitive damages that are grossly excessive and bear no rational or reasonable relationship to a defendant's conduct or culpability or to the actual harm suffered by a plaintiff; and (j) the procedures pursuant to which punitive damages may be awarded under Alabama law permit the imposition of punitive damages in an amount exceeding that reasonably necessary to accomplish any legitimate goals or policies of the State of Alabama.

## TWELVE DEFENSE

Plaintiff's claim for recovery of punitive damages is barred by Ala. Code §§ 6-11-20 and 6-11-21.

## THIRTEENTH DEFENSE

An award of punitive damages in this case would violate Pactiv's constitutional right to due process to the extent separate, individual determinations of punitive liability and amount are not allowed as to each defendant.

## FOURTEENTH DEFENSE

Some or all of Plaintiff's claims may be preempted by state and/or federal statutes, rules, and regulations.

## FIFTEENTH DEFENSE

Plaintiff's allegations of fraud, misrepresentation, and deceit are not stated with the degree of particularity required by the applicable law and should be dismissed.

## SIXTEENTH DEFENSE

Pactiv is entitled to a setoff of any and all sums received by Plaintiff from any source as a consequence of the alleged injuries or damages.

## SEVENTEENTH DEFENSE

If Plaintiff suffered legal injuries, which Pactiv denies, said injuries were not caused or contributed to by exposure to any chemical or substance for which Pactiv or its predecessors is responsible, but rather by exposure to dangerous or hazardous chemicals, fumes, products, substances, dust, etc., present at Plaintiff's (or Decedent's) workplaces or elsewhere for which Pactiv and its predecessors is not responsible.

## EIGHTEENTH DEFENSE

To the extent it is liable to Plaintiff, which is denied, Pactiv is entitled to indemnification and/or contribution from other parties.

## NINETEENTH DEFENSE

The negligence and conduct of Plaintiff's (or Decedent's) employers and/or labor unions are a partial or complete bar to all of Plaintiff's claims.

## TWENTIETH DEFENSE

Plaintiff's claims are barred in whole or in part by the application of the workers compensation statutes and regulations of the State of Alabama or of the states or jurisdictions other than the State of Alabama where Plaintiff's (or Decedent's) alleged damages may have occurred.

## JURY DEMAND

Defendant Pactiv Corporation demands a jury trial in this case.

WHEREFORE, having answered fully, Pactiv prays that Plaintiff's Complaint against it

be dismissed in its entirety with all costs cast on Plaintiff.

Dated: February 13, 2007

/s/  John C. Berghoff, Jr.

John C. Berghoff, Jr. (admitted *pro hac vice*)
Mark R. Ter Molen (admitted *pro hac vice*)
Matthew C. Sostrin (admitted *pro hac vice*)
Counsel for Defendant Pactiv Corporation

OF COUNSEL:
MAYER, BROWN, ROWE & MAW LL-P
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
jberghoff@mayerbrownrowe.com
mtermolen@mayerbrownrowe.com
msostrin@mayerbrownrowe.com

ADDITIONAL COUNSEL:
H. Thomas Wells, Jr.
Alabama Bar No. WEL004
John A. Earnhardt
Alabama Bar No. EAR006
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel:  (205) 254-1000
Fax: (205) 254-1999
twells@maynardcooper.com
jearnhardt@maynardcooper.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew C. Sostrin, hereby certify that on February 13, 2007, I served the foregoing

**Defendant Pactiv Corporation's Answer and Affirmative Defenses to Plaintiff's Complaint**

on the following via email:

W. Eason Mitchell

Gregory A. Cade

Robert Leslie Palmer

Bernard Taylor, Sr.

Douglas S. Arnold

Orlyn O. Lockard, III

Laura Ellison Proctor

Dennis R. Bailey

R. Austin Huffaker, Jr.

/s/  Matthew C. Sostrin